Jacob Markowitz, J.
Motion to invalidate a petition seeking an opportunity to write in the name of a candidate in the Democratic party primary for the office of Representative in Congress, *762 Twenty-third Congressional District, Bronx County, is consolidated for decision with a similar application by another duly enrolled member of the Democratic party, seeking to invalidate the same type of petition for the office of Representative in Congress, Twenty-first Congressional District, Bronx County, and both motions are disposed of as indicated hereinafter.
Jonathan B. Bingham is now serving as a Congressman in the House of Representatives for the Twenty-third Congressional District, and James H. Scheuer has been serving similarly for the Twenty-first Congressional District. Beginning on April 30,1966, supporters of Congressmen Bingham and Scheuer commenced the circulation of designating petitions in their respective districts for the purpose of redesignating each as the Democratic party nominee for Representative in Congress. Before the legal deadline, valid designating petitions were officially filed for both Congressmen. No other designating petitions were filed by any other candidates for these offices. Therefore, in the normal course of events, the names of these candidates, running unopposed in the Democratic party primary, would not appear on any ballots or voting machines, and following the primary election, Bingham and Scheuer would automatically be declared the Democratic party nominees for their respective offices (Election Law, § 149), without the necessity of meaningless balloting, of unwarrantedly. incumbered voting machines and of wasteful public expense.
It appears, however, that, because of the slate voting method, mandated for this primary election to be held on June 28, 1966, certain candidates, running for nomination for other public offices and for election to various party positions, have deemed it politically expedient for the names of Bingham and Scheuer to appear on the voting machines in their respective areas and to have Bingham and Scheuer each head a slate or “ line ” of candidates upon which they would be included as “ running mates ” of the said Congressmen. Accordingly, and in line with this admitted aim, supporters of Bingham and Scheuer and of the aforesaid other candidates concededly (as the stipulated statement of facts will reveal hereafter) adopted a procedure to attempt to effectuate an automatic restoration of the names of Bingham and Scheuer on the ballot, although there was no genuine opposition to their candidacies and to their nominations.
Section 148 of the Election Law, which was promulgated by the Legislature to insure the constitutionality of section 149 aforesaid, provides for a method by which a specified number of enrolled members of a political party, eligible to vote, can be afforded the opportunity to write in the name of a candidate *763 or candidates for nomination or election to any office or party position to be voted upon at a primary election of their party. When a valid petition requesting an opportunity to write in the name of an undesignated candidate or undesignated candidates at a primary election is timely filed, the office or position to be filled is deemed contested, and the name of the candidate or candidates designated (even if there be but one designated candidate to fill a single position or office) must then appear on the ballot for the primary election so that he may bonafidedly be opposed by write-ins.
Whether this procedure, originally intended to afford a substantial group of voters an additional right to nominate a candidate for public office or to elect a candidate to a party position, under circumstances involving a real primary contest, may be used as respondents and others have here attempted, is the prime issue involved in these applications.
Initially, it is noted that respondents’ objections to the court’s jurisdiction are -without merit, and they are, accordingly, overruled.
The facts, as stipulated to and as conceded by the parties, are as follows:
STrPTTLATIOST
“ The respondents Seymour Ross and Seymour Rubinstein and the members of their committee as respondents in these two proceedings hereby concede herein the following:
1 ‘ 1. The petitions in question in this case which were filed to authorize a write-in vote in the Democratic primary for the position of representative in Congress from the 21st and the 23rd Congressional Districts of the State of New York were procured by:
“A — Persons who circulated and/or witnessed the designating petition for nomination as the candidate for Congress of the Democratic party for the said 21st and the said 23rd district of New York of the unopposed candidates James H. Scheuer and Jonathan B. Bingham.
“ B — Persons who signed the said petition designating James II. Scheuer and Jonathan B. Bingham as said candidates.
“ C — Persons appearing as a candidate on the same petition designating James Scheuer and Jonathan B. Bingham.
“2. The printing of the petitions in question, namely for a write-in vote, was ordered by the political clubs supporting James H. Scheuer and Jonathan B. Bingham, including James H. Scheuer and Jonathan B. Bingham’s own home political club, which clubs, including James H. Scheuer’s and Jonathan B. Bingham’s own home political clubs are still continuing to *764 support and are intending to support hereafter James IT. Scheuer’s and Jonathan B. Bingham’s candidacy.
‘ ‘ 3. The Committee to receive notice in connection with the write-in petition was respectively designated and named for the purpose by the clubs respectively supporting and continuing to support said James H. Scheuer and Jonathan B. Bingham.
‘ ‘ 4. The petitions in question in these two proceedings were issued and circulated with the knowledge of the designated candidates, their agents, servants and employees and the political headquarters of the two designated candidates, Jonathan B. Bingham and James H. Scheuer.
“ 5. None of the signers of the petitions in question in this proceeding, namely the petitions for opportunity to write in the name of undesignated candidates Avere told that the said Avrite-in petitions created an opportunity to oppose or defeat the said named designated candidates, and all were told that this was in aid of the two designated unopposed candidates Jonathan B. Bingham and James H. Scheuer.
“ 6. The signers of the petitions in question relied on the statements and representations made to them by the persons procuring their signatures, relied on their good faith and believed that there Avas being conveyed to them Avhatever information should have been conveyed and disclosed to them, and believed and relied on the fact that if no further information Avas disclosed to them that there Avas no information so to be disclosed in all good faith, and relied on the good faith of the person procuring their signatures.
“ 7. That none of the signers of the Avrite-in petition eATer stated to the subscribing witnesses that they requested an opportunity to Avrite in the name of an undesignated candidate for the nomination for the office of member of Congress in opposition to Bingham and/or Scheuer as the case may be.
‘ ‘ 8. That the signers never intended by their signing the petition for Avrite-in to afford to the enrolled members of the party an opportunity to write in the name of a person to oppose the nomination of Bingham or Scheuer.
‘ ‘ 9. That said signers to the write-in petition would not have signed the said Avrite-in petition were they told that the petition Avould afford the enrolled members of the Democratic Party the right to nominate a candidate against the candidate of their choice, Scheuer or Bingham.
“ 10. That the purpose of designating the committees for the two named respondents Avas to place on the ballot the names of said unopposed designees.
*765 “ 11. It was the purpose of the committee with the approval of the respective candidates to support the balance of the other candidates and to avail themselves of having the benefit of slate voting so as to lend voting strength to those other persons named in the designating petitions of the respective candidates to the Congressional offices.
“ 12. And the Court, without further proof, is authorized to find that there was reliance by the signers of the petitions in question upon the statements of the persons procuring the said signatures, and the Court is authorized to find that there was reliance upon the good faith of the persons procuring the signatures in question to the extent of the disclosure by the said procurers of said signatures of all information to the signers that in good faith should have been conveyed to them, namely that they believed that all such information that should have been disclosed to them was disclosed to them.
“ 13. At the request of the parties and in view of the above stipulation the parties agree that the Court may excuse all witnesses who have been subpoenaed and that this stipulation is in lieu of the taking of testimony, and that the testimony, if taken, of witnesses, would substantiate the stipulation in all respects.”
Portions of the stipulation may be summarized as follows: Mo signers of the write-in opportunity petition were informed by the circulators thereof that they were signing to create a situation whereby Congressmen Bingham and Seheuer might be opposed and defeated by a write-in vote. In fact, all signers were specifically told that their signatures were required to aid Bingham and Seheuer. Moreover, no signer, by his subscription to the petition or otherwise, ever intended to afford to himself, or to any other enrolled member of his party, the opportunity to write in, at the primary election, the name of someone opposed to the nominations of Bingham and Seheuer for their respective positions, especially since Bingham and Seheuer were the choice of such signers as their nominees for Representatives in Congress. Finally, if the signers had been made cognizant of all of the facts, they would not have affixed their signatures to the petitions, and the said petitions would have been invalid by virtue of the fact that they would not have contained the legally required number of signatures.
Section 148 of the Election Law specifically defines the required type of petition herein as one ‘ ‘ requesting an opportunity to write in the name of a candidate or candidates, who need not bo specified, for such office or position ’ \ Section 148-a *766 of the Election Law particularizes the form of the petition for opportunity to ballot in a primary election and specifically includes in the statement being made on the petition by each signatory that “ I do hereby request an opportunity to write in the name of an undesignated candidate or candidates ” for a particular office or position.
Accordingly, the very purpose of the said Election Law provisions here in issue is set forth plainly in the language of each section, and it is, in essence, to provide a specified electorate with a means of demonstrating opposition to and of defeating a candidacy where actual opposition exists. Where no real opposition exists and the office or position is not, in good faith, being contested, section 149 of the Election Law provides for deemed nominations or elections without unnecessary and unintended balloting.
Had it been the intention of the Legislature to permit an unopposed candidate to have his name put on the ballot, despite the nonexistence of a contest for the office he seeks, it would have made provision therefor. To hold that it intended such a result by having the candidate or his adherents resort to what is at best a fiction, would be a distortion of the law, and an unwarranted interference with the legislative process.
In this regard, when the enactment of said section 149 was being proposed (L. 1959, ch. 684), Governor Nelson A. Rockefeller, when approving the legislation, stated by message:
“ The elimination of uncontested primaries is very desirable for a number of reasons. It would save considerable unnecessary expense and would facilitate the use of voting machines in primaries by removing uncontested offices from the ballot. Furthermore, it would tend to encourage greater public participation in primaries because- voters would be called to the polls only when there is a real contest. The rights of those who may wish to cast write-in votes at an otherwise uncontested primary are well protected.
“ The bill is sponsored by the Attorney General and has the strong support of the Citizens’ Union of the City of New York.” (N. Y. State Legis. Annual, 1959, p. 442.)
Moreover, if any further demonstration of legislative intent is required as to why sections 148 and 149 of the Election Law were adopted, reference to a memorandum from the State Attorney-General in support of the legislation should suffice. The Attorney-General specifically stated: “In order not to deprive any substantial group of voters of a right which they might otherwise exercise of trying to nominate a candidate for *767 public office or elect a candidate to party position by writing in his name on primary day, the bill provides that this opportunity shall always be afforded, even though the primary is otherwise uncontested, whenever requested at least three weeks before election by a petition of enrolled voters numerous enough to designate a candidate * * * The arrangement for permitting write-in votes in an otherwise uncontested primary only when requested by a small petition of enrolled voters also has advantages over the present procedure. It not only protects the right of any group whose candidate has failed for any reason to get on the ballot to try to elect or nominate him by write-in votes, but it protects the supporters of regularly designated candidates from surprise attack. It is not a valid expression of democracy when a candidate is defeated only because his supporters think he is assured of election without opposition and stay away from the polls while a few opponents secretly organize to write in the name of someone else, as occasionally happens under present arrangements * * * ” (N. Y. State Legis. Annual, 1959, pp. 139-140).
The Election Law of the State of New York is not to be construed as the promulgation of a set of absolute rules of a game with the beneficiaries those most adept at technical interpretation and tortured construction thereof. Bather, the Election Law constitutes the setting forth of express principles, the beneficiaries of which are the electorate of the State, and which are to be construed so as to give effect to the obvious intendment of the Legislature behind their enactment, always bearing in mind that they must be also construed in accordance with their express requirements.
Accordingly, it is clear that respondents herein have not attempted to use the write-in petitions for any intended legislative aim or for any permissible end, but instead in direct contradiction of legislative and executive intent and solely for an improper purpose. Bespondents’ candid admissions — that the signers of the petitions were not, in fact, requesting thereby an opportunity to write in names on a ballot in opposition to the very candidates they were supporting, and that such signers would have been abhorred by such knowledge and would have refused to sign such petitions — are sufficient in themselves to void the instant petitions in that, no matter what their technical label and form, they are not petitions by enrolled members of a party requesting a write-in vote, as is required by sections 148 and 148-a of the Election Law. Whether, therefore, subject petitions are classed as technically insufficient in failing to con *768 form to specific requirements of the Election Law, or whether it is said, as petitioners contend, that they were not filed in good faith, it is plain that they are invalid (see Matter of Berman v. Heffernan, 185 Misc. 746, 747, affd. 269 App. Div. 952, affd. 295 N. Y. 593). The fact that section 148 does not expressly, by its terms, impose any requirement of good faith in its utilization, does not prohibit this court from holding it subject to those general principles utilized in the construction of similar statutes. Parenthetically, it may be noted that utilization of the “write-in” procedure for purposes other than a serious bona fide attempt to afford the electorate an opportunity to write in an opposing candidate is, in essence, electioneering right in the balloting area, since it serves no other purpose than reminding the voter that the unopposed candidate supports the others on the slate. This should be reserved for the campaign.
Moreover, the fact that, in the past, the same use of write-in petitions, as attempted here, has been accomplished successfully by a variety of other candidates without legal challenge, is not evidence of the validity of such procedure, but merely demonstration that, previously, political expediency, insufficient legal knowledge or simple indifference dictated inaction.
Finally, respondents can find no solace or support for their position in section 242-a (subd. 7, par. [c]) of the Election Law, which permits, until July 1, 1966, “ slate voting ”. The provisions of this section pertain only to the arrangement of candidates for offices and positions on the ballot and for the form of the ballot for use on voting machines in primary elections. The section may not be employed to circumvent or to pervert other sections of the Election Law or in justification of an attempt by a particular political group to gain political advantage at the polls.
For the reasons stated, both applications are, in all respects, granted; the subject petitions are declared invalid; and the Board of Elections is restrained from placing the names of Jonathan B. Bingham and James H. Scheuer on the ballot of the Democratic party in the primary election to be held on June 28, 1966, for the offices of Representative in Congress, and is enjoined from providing any write-in space on the primary ballots for the offices of Representative in Congress for the Twenty-first and Twenty-third Congressional District.